# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**24-404**


**TERRI HUNTER**

**VERSUS**

**RAPIDES PARISH POLICE JURY**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 247,937
HONORABLE DAVID M. WILLIAMS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**CHARLES G. FITZGERALD**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.


**REVERSED AND REMANDED.**

**James E. Sudduth, III**
**Kourtney L. Kech**
**Sudduth and Associates, LLC**
**1109 Pithon Street**
**Lake Charles, Louisiana 70601**
**(337) 480-0101**
**Counsel for Plaintiff/Appellant:**
    **Terri Hunter**

**Randall B. Keiser**
**Matthew L. Nowlin**
**Keiser Law Firm, P.L.C.**
**Post Office Box 12358**
**Alexandria, Louisiana 71315-2358**
**(318) 443-6168**
**Counsel for Defendant/Appellee:**
    **Rapides Parish Police Jury**

**FITZGERALD, Judge.**

The issue before us is whether the trial court erred in granting Defendant's motion for summary judgment and in dismissing Plaintiff's whistleblower claim.

## FACTS AND PROCEDURAL HISTORY

This case has been languishing in the court system for years. In February 2013, Terri Hunter was hired as an office manager for the Rapides Parish Coliseum Authority (the "Authority"), a public body created by the Rapides Parish Police Jury. During her employment, Terri was asked or instructed by her superiors to perform various payroll and financial tasks that she believed were improper. She also discovered discrepancies that she reported to the chairman of the Authority, the vice-chairman of the Authority, and the Authority's independent auditor.

Terri maintains that her concerns had fallen on deaf ears with her superiors, so she reported the discrepancies to law enforcement. A criminal investigation was then instituted. Terri cooperated. Yet in May 2013, the Authority terminated her employment.

Two months later, Terri filed suit against the Authority under La.R.S. 23:967, the Louisiana "whistleblower" statute. She alleged that she was terminated for refusing to engage in financial improprieties, for reporting financial improprieties, and for cooperating with law enforcement.

The Authority answered the suit and then moved for summary judgment. As to summary judgment, the Authority sought to dismiss the whistleblower claim by arguing that it was not an "employer" because it did not meet the "twenty or more employees" threshold required by La.R.S. 23:302(2). But that statute falls under Louisiana Employment Discrimination Law.

In March 2014, the trial court granted summary judgment and dismissed Terri's whistleblower claim. Notably, in its reasons for judgment, the trial court rejected the Authority's "employer" argument and instead found that Terri was a probationary employee and thus not entitled to protection under the whistleblower statute. Yet that ground for dismissal was not before the trial court on summary judgment.

Terri appealed, and a different panel of this court then reversed and remanded the case back to the trial court in *Hunter v. Rapides Parish Coliseum Auth.*, 14-784 (La.App. 3 Cir. 2/4/15), 158 So.3d 173 ("*Hunter I*"), *writ denied*, 15-737 (La. 6/1/15), 171 So.3d 934. The panel in *Hunter I* explained that the trial court erred in granting summary judgment on grounds not asserted by the Authority and by considering extrinsic evidence. The panel then turned its attention to the Authority's actual argument for summary judgment—that it was not an "employer" as defined by La.R.S. 23:302(2). Ultimately, the panel rejected this argument, refusing to extend the definition of "employer" contained in La.R.S. 23:302(2) to whistleblower claims brought under La.R.S. 32:967.

Eight years later, in April 2023, the Authority filed a second motion for summary judgment, asserting—among other grounds—that Terri's whistleblower claim should be dismissed because the Authority does not meet the definition of "employer" contained in La.R.S. 23:302(2). The trial court granted the motion solely on that basis, pretermitting discussion of the additional grounds. This ruling was reduced to a written final judgment signed on April 10, 2024. That judgment is now before us on appeal.

On appeal, Terri asserts five assignments of error:

2

1. The Trial Court erred in rejecting, disregarding, or otherwise failing to follow the law of this case, wherein this Court declined to extend the definitional carve-outs of "employer" found in La. R.S. 23:302 to claims arising under La. R.S. 23:967.

2. The Trial Court erred in refusing to follow the law of this Circuit declining to extend the definitional carve-outs of "employer" found in La. R.S. 23:302 to claims arising under La. R.S. 23:967.

3. The Trial Court erred in applying the definitional carve-out(s) of La. R.S. 23:302's "employer" definition to [Terri's] LWS claim.

4. The Trial Court erred by not applying the ordinary definition of "employer" to Hunter's LWS claim.

5. The Trial Court erred in granting summary judgment in favor of the Authority.

## LAW AND ANALYSIS

In reviewing the trial court's decision on a motion for summary judgment, this court applies the de novo standard of review using the same criteria applied by the trial court to determine whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The Authority's motion for summary judgment asserts three grounds for dismissal: first, the Authority was not an "employer" as defined by La.R.S. 23:302(2). Second, Terri was hired to find discrepancies and thus she is not entitled to whistleblower protection for actions related to her job. And third, there was no actual violation by the Authority.

As stated above, the trial court granted summary judgment and dismissed Terri's whistleblower claim based solely on the first ground: the trial court concluded that the definition of "employer" in La.R.S. 23:302(2) applied to whistleblower

3

claims under La.R.S. 23:967 and that the Authority was not an employer under this definition. Yet this exact issue was addressed in *Hunter I*. And the panel there concluded that the definition of "employer" in La.R.S. 23:302(2) should not be applied to whistleblower claims under La.R.S. 23:967. So does the law of the case doctrine prevent us from revisiting this issue? You bet it does.

The law of the case doctrine was addressed by the Louisiana Supreme Court in *Petition of Sewerage and Water Board of New Orleans*, 278 So.2d 81, 84 (La.1973) (emphasis added):

> The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own *rulings of law* on a subsequent appeal in the same case. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.

> Nevertheless, the law of the case principle is applied merely as a discretionary guide: Argument is barred where there is merely doubt as to the correctness of the former ruling, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice.

With this in mind, *Hunter I* was a previous appeal in this case between the same parties, involving the same legal issue, based on the same material facts. There, the Authority argued that the definition of "employer" in La.R.S. 23:302(2) should be applied to whistleblower claims brought pursuant to La.R.S. 23:967. The Authority then argued that summary judgment was proper because it was not an "employer" under that definition. The panel disagreed, explaining as follows:

> In *Anderson v. Ochsner Health System*, 13-2970, p. 4 (La. 7/1/14), [172] So.3d [579, 581], 2014 WL 2937101 (citations omitted), the supreme court addressed statutory interpretation, explaining:

4

The paramount question in all cases of statutory interpretation is legislative intent; ascertaining the reason that triggered the enactment of the law is the fundamental aim of statutory interpretation. The rules of statutory construction are designed to unveil and enforce the intent of the legislature. Legislation is the solemn expression of legislative will; thus, interpretation of a statute involves primarily a search for the legislature's intent.

In ascertaining the true meaning of a word, phrase, or section of a statute, the act as a whole must be considered. When doubt exists as to the proper interpretation of a statute, the title or preamble may be used to determine legislative intent.

Chapter 9 is entitled "Miscellaneous Provisions." Section 967 is located in Part III of Chapter 9; Part III is entitled "Interference with Individual Rights." Chapter 3–A is entitled "Prohibited Discrimination in Employment." Section 302 is located in Part I of Chapter 3–A; Part I is entitled "General Provisions." Parts II–VII of Chapter 3–A identify the specific types of discrimination prohibited by Chapter 3–A, e.g., age, disability, pregnancy.

The placement of Section 967 in Chapter 9, Part III, which addresses employers' interference with employees' individual rights, as opposed to employers' discrimination against employees addressed in Chapter 3–A, indicates that the legislature intended Section 967 to protect employee's individual rights. This placement does not indicate that the legislature intended for it to be treated as a statute prohibiting discrimination as argued by the Authority. This conclusion is strengthened when we consider: (1) the purpose of Chapter 3–A is to prohibit discrimination; (2) the terminology contained in La.R.S. 23:302 limits its application to Chapter 3–A; (3) the intent of Section 967 is to provide a remedy to employees whose employers retaliate2 against them for exercising their individual right to report the employers' violations of state law, and (4) nothing in Chapter 9 or Section 967 indicates that the legislature intended to define employer for purposes of those provisions by the definition contained in Section 23:302.

Considering the limiting use of "this Chapter" in La.R.S. 23:302 and the lack of an indication in Chapter 9 and Section 967 that La.R.S. 23:302's definition of employer applies to Chapter 9, we decline to extend the definition as argued by the Authority. Accordingly, we conclude that the Authority did not prove it is entitled to summary judgment as set forth in its motion for summary judgment.

*Id.* at 177–78 (footnote omitted).

5

In sum, the statutory interpretation given in *Hunter I* formed the basis for that panel's ruling against summary judgment. In our view, the interpretation is not palpably erroneous. Nor is it manifestly unjust. Indeed, in *Verrett v. Lake Wellness Center, L.L.C.*, 23-168 (La.App. 3 Cir. 11/22/23) (unpublished opinion), a different panel of this court cited *Hunter I's* interpretation with approval.

For these reasons, we are precluded by the law of the case doctrine from reconsidering the Authority's argument that the definition of "employer" in La.R.S. 23:302(2) should be applied to Terri's whistleblower claim. The trial court erred in granting summary judgment. That judgment is reversed, and this case is remanded to the trial court for consideration of the Authority's remaining grounds for summary judgment.[1]

## DISPOSITION

The trial court's judgment of April 10, 2024, is reversed. This case is remanded to the trial court for consideration of the defendant's remaining grounds for summary judgment. And the costs of this appeal, which total $3,721.55, are assessed to the Rapides Parish Police Jury.

**REVERSED AND REMANDED.**

---

[1] Although our opinion focuses on Terri's first assignment of error—the law of the case doctrine—all five assignments have merit.